# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA

**DOROTHY PIERCE**
750 Mourning Dove Lane, Seneca, SC. 29678.
**Plaintiff**

V.

**CLEMENTS ELECTRICAL, INC.**
Electrical Company contracted by the Plaintiff
802 Friendship Rd, Seneca, SC. 29678.
**Defendant**

**ALTON FREDERICK CLEMENTS JR.**
Owner of Clements Electrical, Inc.
418 Gassaway St Central, SC 29630.
**Defendant**

**JANET GAY CLEMENTS**
President of Clements Electrical, Inc.
418 Gassaway St Central, SC 29630.
**Defendant**

**JASON ALTON CLEMENTS**
Manager at Clements Electrical, Inc.
440 Gassaway St Central, SC 29630.
**Defendant**

**NICHOLAS BEHRINGER**
Assistant Project Manager and Estimator at
Clements Electrical, Inc.
516 Horseshoe Dr. Seneca, SC 29678.
**Defendant**

**BRANDON J. DURHAM**
Electrician At Clements Electrical, Inc.
126 Wood Creek Dr. Piedmont, SC 29673.
**Defendant**

**JEFFERY PILGRIM**
An electrician at Clements Electrical, Inc.
206 Francis St Central, SC 29630.
**Defendant**

**RICHARD HUNT MCDUFF**
Attorney At Law
401 Pointe East Dr. Seneca, SC 29672.
**Defendant**

**MORRELL, JAHN & MCDUFF, PA aka
M.J.M. Law, LLC**
119 Professional Park Dr, Seneca, SC 29678.

**Civil Case No.:**

RECEIVED
USDC. CLERK GREENVILLE, S
2022 JAN 19 PH 3:51

1

**Defendant**

**SHERRY L. BURGESS**
Former Manager for at Plaintiff's Factory
401 Pointe East Dr. Seneca, SC 29672.

**Defendant**

**JERRY NICKOLSON**
Former Employee of the Plaintiff
220 Vinyard Lane, Salem SC,29676.

**Defendant**

**FRANCESCO MAJIA ARMANDO FRANK**
Former Technician at Plaintiff's Factory

**Defendant**

**MELISSA C. CHASTAIN**
Former Employee of the Plaintiff
410 John Okelley Dr, Seneca, SC 29678.

**Defendant**

**JARED ADAM PIERCE**
Plaintiff's Stepson & Plaintiff in Probate Case
404 N Church St Walhalla, SC 29691 and
106 Blackbottom Rd Liberty, SC 29657.

**Defendant**

**SANDRA PHILIPS PIERCE**
Wife to Defendant, Jared Adam Pierce
404 N Church St Walhalla, SC 29691.

**Defendant**

## COMPLAINT

### (Race, Ethnicity, or National origin-based Discrimination)

### Introduction

1. Plaintiff, DOROTHY PIERCE (the "Plaintiff") proceeding Pro Se, brings this action under 28 U.S.C. § 1331, which gives District Courts jurisdiction over all civil actions arising under the Constitution and Federal laws. Plaintiff claims Race, Ethnicity, or National origin-based Discrimination under Civil Rights Act 1866, 42 U.S.C. §1981,

as amended by the Civil Rights Act of 1991 and Civil Rights Act of 1871 - C.R.A. - 42 U.S. Code 21 §§1981.

2. Civil Rights Act of 1866. Section 1981(a) provides the following: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to the like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

3. Plaintiff contends that the Defendants engaged in discriminatory practices with malice or reckless indifference to her federally protected rights, thereby intentionally causing damages and losses to her and her business because of her Race (Black-African) and her National nationality Origin (Ugandan).

4. The Defendants' conduct as stated at length herein constitutes discrimination based on race in 42 U.S.C. §1981.

5. The stated reasons for the Defendants' conduct were not the true reasons but instead was a pretext to hide the Defendants' discriminatory animus.

6. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied opportunities under 42 U.S. Code § 1981; and has suffered significant financial loss, depression, anguish, humiliation, distress, and inconvenience because of Defendants' actions, thereby entitling her to compensatory damages.


## JURISDICTION

7. This Court has subject matter jurisdiction over this civil case pursuant to 28 U.S.C. § 1331, which gives District Courts jurisdiction over all civil actions arising under the Constitution and Federal laws. Plaintiff claims Race, Ethnicity, or National origin-based Discrimination under Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 and Civil Rights Act of 1871 - C.R.A. - 42 U.S. Code 21 §§1981.

8. The Court has jurisdiction over Defendants for the following reasons: (1) Defendants are present within or have minimum contacts within the judicial district of South

Carolina. (2) Defendants have purposefully availed themselves of the privileges of conducting business in the judicial district of South Carolina. (3) Defendants have sought protection and benefit from the laws within the judicial district of South Carolina. (4) Defendants regularly conduct business within the judicial district of South Carolina, and Plaintiff's cause of action arises directly from Defendants' contacts and other activities in the judicial district of South Carolina. Finally, (5) Defendants have a regular and established business in the judicial district of South Carolina.

## VENUE

9.  The venue is proper in this judicial district pursuant to Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 and Civil Rights Act of 1871 - C.R.A. - 42 U.S. Code 21 §§1981, 1981A, 1983, & 1988. The venue is proper under this judicial district because: a) causes of action arose in this judicial district, b) All Defendants reside in this judicial district, and c) the subject of the action or some part of the property is situated in this judicial district.

## PARTIES

10. Plaintiff, DOROTHY PIERCE of address 750 Mourning Dove Lane, Seneca, SC. 29678, is a Black African Female Citizen of the Republic of Uganda and a legal resident of the United States of America. She is the single-member owner of American Pharma Machinery, L.L.C., and Intercontinental Alternative Medicine. The companies' registered address is 708-709 Mourning Dove Lane, Seneca, SC. 29678 (hereinafter: "the warehouse").

4

11. Defendant No.1, CLEMENTS ELECTRICAL, INC. aka Contractor's Electric, is an Electrical company contracted by Plaintiff to Install Face Mask Manufacturing Machines, having its office at 802 Friendship Rd, Seneca, SC. 29678.

12. Defendant No. 2, ALTON FREDRICK CLEMENTS aka. Alton Clements, Alton F Clements, Alton F Clements Jr, Alton Frederick Clements, Alton Fredrick Clements Jr, address 418 Gassaway St Central, SC 29630, is a white male, owner of Clements Electrical, Inc. Defendant is being sued here in his official capacity.

13.  Defendant No. 3, JANET GAY CLEMENTS aka. Janet Clements, J Clements, Janet A Clements, Janet G Clements, Janet Clements, Janet G Wheeler, Janet Clemens, Joyce Clements, Clements Janet, Justine Clements, Jennifer Clements of address 418 Gassaway St Central, SC 29630 is a white female, owner, and president at Clements Electricals, Inc. Charged with the responsibility of overseeing the operations of the company. The DefendantDefendant is being sued here in her official capacity.

14. Defendant No. 4, JASON ALTON CLEMENTS aka. Jason Clements, Jason A Clements, Jason A Clements, Jason Alton Clements, Alton Clements, of address 440 Gassaway St Central, SC 29630, is a white male manager at Clements Electrical Inc.

15. Defendant No. 5, NICHOLAS BEHRINGER aka. Nick Behringer, Nicholas A Behringer, Nick Behringer, of address 516 Horseshoe Dr. Seneca, SC 29678, is a white male, Assistant Project Manager, and Estimator at Clements Electrical, Inc.

16. Defendant No. 6, BRANDON J. DURHAM, of address 126 Wood Creek Dr. Piedmont, SC 29673, is a white male, Electrician at Clements Electrical Inc.

17. Defendant No. 7, JEFFERY PILGRIM aka. Jeff Pilgrim, Jeffrey Ray Pilgrim, Jeffrey R Pilgrim of address 206 Francis St Central, SC 29630 is a white male technician at Clements Electrical, Inc.

18. Defendant No. 8, RICHARD HUNT MCDUFF aka. RICK H. MCDUFF of address 401 Pointe East Dr. Seneca, SC 29672 is a white male, Attorney licensed to practice law in South Carolina. At the time of these incidents, Mr. McDuff was retained as the Attorney for Defendant Jared Adam Pierce, who contested the last will of Plaintiff's Deceased Husband in Probate case No: 2020ES3700532. Richard McDuff also doubled as an attorney for Cornerstone of Greenville L.L.C., the landlord of the Plaintiff's face mask factory at the time.

19. Defendant No.9, MERRELL, JAHN, & MCDUFF, PA, aka M.J.M. Law, L.L.C. of address 119 Professional Park Dr, Seneca, SC 29678 is a law firm in which Defendant Richard Hunt McDuff is a partner. Accordingly, Plaintiff includes this DefendantDefendant in this suit under the doctrine of vicarious liability.

20. Defendant No.10, SHERRY L. BURGESS aka. Sherry Burgess, Sherry Vansteenburg, Sherry Ortega, Sherry Burgess Ortega, Sherry L Ortega, Sherry Burgess Vansteenburg, Sherry L Burgess, Sherry S Burgess, Sheir Ortega, Sherry B Ortega, Sherry B Vansteenburg, Sherry L Ortega of address 301 Zion Hill Rd. Seneca, SC.29678 is a white female, former manager of Plaintiff's Face Mask Factory.

21. Defendant No.11, NICHOLSON JERRY of address 220 Vinyard Lane, Salem SC,29676, is a white male, a plaintiff's former employee.

6

22. Defendant No. 12, FRANCESCO MAJIA ARMANDO FRANK, is a Hispanic male, former employee/contractor of Plaintiff.

23. Defendant No.13, MELISSA C. CHASTAIN aka. Melisa Chastain, Melisa Chastain, Melisa C Chastain, Melisa Clark Chastain, Melissa F. Chastain, Melissa Chastain, Melissa C Chastain, Melisa F Clark, Melissa F Clark, Melissa Faye Clark, Melissa Faye Chastain, Melisa Clark Chastain, Melissa Clark, Lisa Clark of address 410 John Okelley Dr, Seneca, SC 29678, is a white female, a former employee of the Plaintiff.

24. Defendant No.14, JARED ADAM PIERCE aka. Adam Pierce, Jared Pierce, Jared A Pierce, Jared Adam Pierce, Jarred Adam Pierce of address 404 N Church St Walhalla, SC 29691 and or 106 Blackbottom Rd Liberty, SC 29657 is a white male, stepson of the Plaintiff and Plaintiff in the Probate Estate Case No: 2020ES3700532.

25. Defendant No.15, SANDRA PHILIPS PIERCE aka. Sandra Pierce, Sandra P Culbertson, Sandra J. Culbertson, Sandra J Pierce, Sandra Jean Culbertson, Sandra J Pierce, Sandra J Culbertson, Sandr J Culbertson, Sandy Pierce, S Pierce, sandy Phillips Pierce, Sandy Phillips is a white female, Wife to Defendant No.14 (Jared Adam Pierce).

## FACTUAL MATERIAL TO ALL COUNTS

26. On or about May 2019, Plaintiff established American Pharma Machinery, a Limited Liability Company organized under the laws of the state of South Carolina to deal in manufacturing and packaging machines. The company's registered address is 708-709 Mourning Dove Lane, Seneca, SC. 29678 (hereinafter: "the warehouse"). Defendant Melissa C. Chastain worked at this warehouse.

7

27. On or about June 30, 2020, Plaintiff hired Melissa C. Chastain to work at her store in Anderson and the warehouse in Seneca.

28. In or about July 2020, after the COVID-19 hit, Plaintiff imported Face Masks Manufacturing Machines and Face Mask Materials to start a Face Mask Production in Seneca, South Carolina.

29. On or about July 2020, Plaintiff leased a Face Mask Manufacturing Space at 513 Bypass 123, Seneca, SC. 29678 (hereinafter "the Factory") from Cornerstone of Greenville, L.L.C. This location did business as American Pharma Machinery. Defendants Sherry L. Burgess, Nicholson Jerry, and Francesco Majia Armando worked there. Unfortunately, the Attorney for Cornerstone of Greenville, Richard McDuff, brokered the lease contract.

30. On September 14, 2019, Doyle E. Pierce, Plaintiff's husband, passed away at Prisma Hospital, Oconee County, South Carolina.

31. On September 15, 2019, Defendant No.14, JARED ADAM PIERCE, and his brother Gregory Alan Pierce came to Plaintiff's house to arrange the burial of Plaintiff's husband and Jared Adam Pierce's father. Gregory asked to see his father's guns and then took several of them by force. Defendant No.14, JARED ADAM PIERCE, threatened to kill Plaintiff's "black ass" and hide the body in the woods where no one would find her corpse while he chased Plaintiff. Plaintiff believes her life was saved because she could run much faster than her attacker. Plaintiff called 911, and the guns were recovered and returned by the Oconee deputy sheriff officers when they arrived at the scene. Criminal charges have been filed. Trespass notices were placed on both

Defendant No.14 and Gregory. They have both broken the trespass notice since the placement.

32. On or about September 27, 2020, Plaintiff hired Defendant No.10, SHERRY L. BURGESS (hereinafter "Sherry"), to manage Plaintiff's Factory.

33. Defendant No. 10, Sherry L. Burgess, insisted that Plaintiff employ her father, Nicholson Jerry (hereinafter Defendant No. 11), and Francesco Mejia Armando Frank (hereinafter Defendant No. 12), her friend, to work for the Plaintiff's Factory. Accordingly, in or about September 2020, Plaintiff hired the two individuals.

34. While Plaintiff was looking to engage a service provider to install the imported facemasks manufacturing machines, upon the recommendation of Defendant No. 10 (Sherry L. Burgess), Plaintiff engaged the services of Clements Electrical Inc. (hereinafter Defendant No. 1), to install the machines. Defendant No. 1 agreed to provide electric installation of machines at Plaintiff's Factory.

35. In October 2020, Defendant No. 1 sent their employees, Jason Alton Clements (hereinafter Defendant No. 4), Nicholas Behringer (hereinafter Defendant No. 5), Brandon J. Durham (hereinafter Defendant No. 6), and Jeffery Pilgrim (hereinafter Defendant No. 7), to the Plaintiff's Factory to start the process of installation of the Plaintiff's machines. Defendant No. 5 (Nicholas Behringer) stated that it would take about seven days to install all the machines at the beginning of the installation. However, the installation was still not complete on January 12, 2021, when they uninstalled all the Machines, including the ones already paid for by Plaintiff. It is also important to note that the services were exaggerated and overpriced, but Plaintiff still

engaged them in good faith, and for the long term, as her employee, Defendant No. 10, suggested them.

36. Plaintiff paid Defendant No. 1 (hereinafter Clements Electrical Inc.) $6,168.00 via check No. 1020 dated 11/23/2020 for the first invoice Defendant sent to Plaintiff for partial installation of the machines for work done between work November 2, 2020, and November 11, 2020. *A copy of the Check has been annexed here as Annexure A.*

37. Defendant No. 1 ordered Seneca Light and water to dig a line from the nearest transformer belonging to B.P. Western Hotel to Plaintiff's Factory to prepare for installing a transformer. Plaintiff made a payment of $4,152.00 to Seneca Light and water on December 18, 2020. *A copy of the Check is annexed here as Annexure B.*

38. On the same day, i.e., December 18, 2020, a check for $4,500.00 was delivered to Cornerstone of Greenville, L.L.C., the landlord of the Factory, for rent ending on January 20, 2021. *A copy of the Check is annexed here as Annexure C.*

39. Plaintiff had planned for a round trip for December 2020 holidays, and as such, she left for the planned trip to Uganda on December 18, 2020, and was to return on or about January 18, 2021. *A copy of the tickets is annexed here as Annexure D.*

40. Plaintiff released all the employees for the Christmas holidays from December 22, 2020, until January 4, 2021. It is also worth noting that Plaintiff had made all payments of wages to all her staff at this time. Therefore, nobody was at work because of the holidays. *A copy of paystubs has been annexed here as Annexure E.*

41. On December 28, 2020, Defendant No. 5 (hereafter NICHOLAS BEHRINGER) sent an invoice N0. 1585949S to the Plaintiff in favor of Defendant No.1 aka. Clements

Electrical Inc. via Email dated 12/28/2020 of $5,764.00, and the due date on the said invoice was 1/27/2021. Plaintiff also kept in contact with Defendant No.5 during her travel over emails and text messages about installing a transformer and a power panel at the Factory until about January 5, 2021. Plaintiff's last Email to the Defendant No. 5 was not responded to. ***A copy of the Emails has been annexed here as Annexure F.***

42. On or about January 4, 2021, to Plaintiff's surprise, Defendant No.10, herein Sherry L. Burgess, demanded that she wanted a meeting with Plaintiff before she and other employees, i.e., Defendant No.11, Nicholson Jerry, and Defendant No. 12, Francesco Majia Armando Frank could return to work. Plaintiff found the suggestion very strange because Sherry already knew that Plaintiff was away and would not return until January 20, 2021. After a series of back-and-forth texting, Sherry made it clear that she and the rest of the employees she hired, Nicholson Jerry and Francesco Mejia, were not going back to work and had therefore quit.

43. Subsequently, Defendant No. 13, i.e., Melissa C. Chastain, working at the warehouse, also told Plaintiff that she would not be returning to work until she met with Plaintiff. This came to the knowledge of Plaintiff later that Defendant No. 10, hereinafter Sherry L. Burgess, had spoken to Defendant No. 13 and provoked her to quit the job. It is clear that an orchestrated effort had commenced at this time against Plaintiff, contributing to her sufferance and harassment. It is also worth noting that around this time, RICHARD HUNT MCDUFF (hereinafter Defendant No. 8) gained possession of an American Pharma Machinery customer list through conversation with the

plaintiffs' employees. Defendant No. 8 took undue advantage of the obtained customer list, narrated in the Complaint below.

44. On or about January 4, Plaintiff sent Defendant No. 13, Melissa C. Chastain, a text after getting a confirmation from Sherry that they wouldn't be going back to work and asked how she would get her keys to the warehouse at 708 Mourning Dove Lane. Melissa Promised to return the keys to Plaintiff and Plaintiff alone personally.

45. Defendant Sherry L. Burgess and Francesco Mejia had the keys to Plaintiff's Face Mask Factory at 513 Bypass 123. Sherry promised to keep the key until Plaintiff returned. Defendant Francesco Majia Armando Frank was not reachable.

46. Plaintiff had created a bank account before going to Uganda for the Factory. A debit card for this account with a single purchase limit of $100 was issued to Defendant No.10, Sherry L. Burgess. It is important to note that upon Sherry's refusal to go back to work on January 4, Plaintiff immediately blocked the card. On or about January 12, 2020, Sherry attempted to pay $5,764.00 to Clements Electrical Inc. for a bill, which was not due yet. The transaction was declined as Plaintiff had already blocked the card. Defendant Sherry L. Burgess had no authority to pay this bill. Besides, she was no longer an employee of Plaintiff because she had quit.

47. On January 12, 2021, without consultation with Plaintiff, Defendants No.1, 4, 5, 6 and 7, 10, 11, 12, and 13 unlawfully gained access to the Plaintiff's Factory at 513 Bypass 123. Defendants No.4, 5, 6 and 7, uninstalled all the Plaintiff's machines for which they had already been paid to install. It is instrumental to note that Defendant No. 10 sent a text to Plaintiff on January 13, 2021, stating that she had let Defendant No.1 and others into the Factory to "get their things ."It is worth noting that at this

time the Plaintiff had no one employed at the Factory since the employees had already quit, yet Defendant No.10 and 12 were holding keys to be returned to Plaintiff upon her return. As mentioned earlier, the keys were to be kept with them only in good faith until they hand over the same to the Plaintiff but post quitting the job at the Factory, they do not hold any right or authority to let anyone in.

48. Neither Defendant No.1 nor Defendants No. 4, 5, 6, and 7 at that time had any of their belongings at the Plaintiff's Factory, and Plaintiff had paid all the due invoices to Defendant No.1 herein Clements Electrical Inc. in full. Therefore, Defendants No. 4, 5, 6 and 7, had no such reason to get into the factory premises of Plaintiff and uninstall the machines. It is to be noted that no prior intimation was given to Plaintiff either. Defendants No. 10, 11, 12, and 13 stated that they observed Defendant No.1 and others uninstall the machines whose installation charges were already paid by Plaintiff against the first invoice of $ 6,168.00. They also uninstalled all the 3 phase machines they had installed for $5,764.00 included in the invoice N0.1585949S, which was NOT DUE until January 27, 2021.

49. On January 12, 2021, while Defendants No.1, 4, 5, 6, and 7 uninstalled the machines at the factory premises of Plaintiff, several other items were stolen. It is believed basis the statements by Defendants No. 10, that Defendants No. 4, 5, 6, and 7, in cohorts with Defendants No. 10, 11, 12, and 13, were all present. A brand-new air compressor ($2,914.99), a 15-gallon air compressor, five brand new office chairs, five brand new desktop computers, brand new pallet jack, six office Telephones, an Office Printer, an additional $15,900 in tools and supplies, and many other items were stolen from the Factory.

50. Upon return from Africa, Plaintiff contacted Defendant No.10, Sherry L. Burgess, and Defendant No.13, Melissa C. Chastain, for her facility's keys. However, she was mortified to learn that all the keys to her facilities were handed over to the Oconee County Sheriff Department and other third parties, without any intimation shared with the Plaintiff.

51. According to Defendant Melissa C. Chastain, she was instructed by Sheriff Michael L. Crenshaw of the Oconee County Sheriff Department to give the keys to Plaintiff's warehouse at 708 Mourning Dove Lane to Jared Adam Pierce and Sandy Phillips Pierce. The Sheriff's office was aware of the threats made by Jared against Plaintiff's life and the tense legal matters over the Estate of Plaintiff's deceased husband in probate case No.2020ES3700532. Plaintiff then contacted Defendant Jared Adam Pierce via text message and threatened to report the unauthorized entry into her warehouse to law enforcement if the keys were not returned as soon as possible. Jared Adam Pierce dropped the Plaintiff's key at the Sheriff's Department. Plaintiff had to use her Attorney to get the keys from the Oconee Sheriff's Department. Plaintiff realized that the Defendants, Jared Adam Peirce and Sandy Philips Piece, had accessed her warehouse, went through her private documents, took pictures of the warehouse, and deleted that day's recording of the security camera footage. She also found that many items were missing, including her documents from the warehouse.

52. Defendant, Sherry L. Burgess, the manager of the Plaintiff's Factory, told Plaintiff that, on the advice of Defendant Richard Hunt McDuff, she and Francesco Mejia Armando dropped all the keys to Plaintiff's Factory at 513 Bypass 123 to the Oconee County Sheriff department. It is unclear when this advice was given and what the

intentions of McDuff were. Plaintiff's lawyer later got the keys from the Oconee

County Sheriff Department. When Plaintiff finally recovered the keys to her Factory

from the Sheriff's department, all movable items were stolen. It is important to note

that Defendant No. 8, Richard Hunt McDuff, and Defendant No.10, Sherry L.

Burgess, should not have self-decided regarding the disposal of the keys when

Plaintiff had already instructed Defendant No. 10 to hold the keys until her return.

53. Plaintiff filed police report No. 21000076 regarding stolen items from the Factory

with the Seneca Police department. The case is still under investigation as of the time

of this filing.

54. Plaintiff attempted to have a direct conversation with Defendants Jason Alton

Clements and Nicholas Behringer about her stolen items and refund for payment she

made on the Uninstalled equipment. Still, they did not want anything to do with

Plaintiff though admitted on a recorded phone call that they took the Plaintiff's items

from the Factory and will come back to reinstall the machines once the invoice not

Yet Due is paid in full.

55. On February 2021, Plaintiff visited Defendant No.1, Clements Electrical Inc. office at

802 Friendship Rd, Seneca, SC 29678, to resolve the issue. Still, Defendant No. 4,

Jason Alton Clements, sent Plaintiff away and threatened to have Plaintiff arrested if

she continued to ask questions about the whereabouts of her stolen items or her

money back. Jason Alton Clements told Plaintiff to SUE their company instead.

56. Defendant No.8, Richard Hunt McDuff, is the Attorney for Cornerstone of

Greenville, L.L.C., owning some commercial real estate in Greenville and Oconee

Counties. When Plaintiff solicited a lease for 513 Bypass 123, Seneca, SC. 29678,

McDuff brokered the deal between Cornerstone and Plaintiff. Several emails were exchanged between the parties. Doyle E. Pierce, the Plaintiff's husband (now deceased), signed the lease as a witness before his passing in September 2020. ***Copies of the Emails and Lease agreement are annexed herein as Annexure G.***

57. In or about October 2020, Richard H. McDuff was retained by defendant No. 14, Jared Adam Pierce, in contesting the will of his father, Doyle Elton Pierce, against Plaintiff. The will is contested at the Probate Court, County of Oconee, SC. Case No: 2020ES3700532. Richard Hunt McDuff Violated Rule 1.7 of the South Carolina Rules of Professional Conduct when he took the Probate case against the Plaintiff.

58. On or about December 18, 2020, Plaintiff went for her planned trip to Uganda with a return ticket for January 18, 2021. In Plaintiff's absence, Mr. McDuff orchestrated a full-force attack to destroy Plaintiff's reputation, emotional health, and business interest. These actions do not recognize the humanity of Plaintiff. Additionally, McDuff did not feel there would be legal repercussions to his illegal activities. If Plaintiff were Caucasian, McDuff would not have acted in this way. It is clear McDuff felt entitled to violate the Plaintiff's rights and felt that Oconee Justice System would not hold him accountable.

59. While taking advantage of Plaintiff's absence and being the Attorney for Plaintiff's landlord, Richard H. McDuff had a series of illegal communications with Plaintiff's employees and dangerously interfered with business operations. He influenced these employees to terminate their employment with the Plaintiff and leave the keys with the Oconee County Sheriff Department after crimes requiring the keys were complete. McDuff also unlawfully obtained a list of Plaintiff's company customers

16

and contacted them with false and defamatory information. Richard Hunt McDuff and Jared Adam Pierce manipulated Plaintiff's employees using malicious, damaging, and slanderous claims to get information about Plaintiff's business and customers, an action that damaged the reputation of Plaintiff and caused irreparable emotional and financial damage to the Plaintiff.

60. When the employees terminated their employment with Plaintiff, several items from Plaintiff's facility were stolen, including two air compressors, five brand new office chairs, five brand new desktop computers, brand new pallet jack, Hp printer, all of the office supplies, and many more items. Plaintiff filed police report No. 21000076 regarding stolen items from the Factory with the Seneca Police department. The case is still under investigation as of the time of this filing. *A copy of the police report is annexed herein as Annexure H.*

61. Also, under the influence of the Attorney, Jared Adam Pierce (hereinafter "Adam"), claimed ownership of the Plaintiff's business in Anderson city, South Carolina. Jared perpetuated the lies supplied by McDuff that Plaintiff had fled the country and would not return. According to the employee, in a report to the police, Jared instructed the employee to quit her job and take the Plaintiff's Dell Latitude 5500 (8th generation), all the cash in the cash drawer, and the microwave. Additionally, Jared instructed this employee to hand over Plaintiff's store keys to the Sheriff's department. These actions permanently closed this store and suffered immense financial loss. *A copy of the police report is annexed herein as Annexure I.*

62. In or about January 2021, through an Interview of the Plaintiff's employees and her companies, defendant Richard Hunt McDuff obtained a list of one of the companies'

17

customers with late deliveries or outstanding concerns. The Attorney contacted these clients, exhorting them to file complaints against the Plaintiff (not her companies) both in Court and the police. As a result, McDuff convinced three American Pharma Machinery, L.L.C. (A.P.M.) clients to act.

a. Two clients of A.P.M. filed cases of breach of trust with the Sheriff's department against the Plaintiff, not her company, under the request of Attorney Richard McDuff. These cases were based on payments made stating that Plaintiff had no intent to deliver the purchased products as she had fled the country. On the contrary, the machines were on the way to being delivered when the charges were filed and were all delivered to the customers' satisfaction. The Sheriff later closed these cases as it became apparent the charges were frivolous. The cases were closed by the Sheriff's department without notifying the Plaintiff of the charges/cases. Plaintiff did not discover these charges were pressed until months later, or about June 10, 2021, making it impossible to repair the customer relationship and Plaintiff's reputation. ***Copies of the police reports are annexed herein as Annexure J.***

b. The third client filed a claim for damaged equipment through one of the lawyer friends of McDuff. The client lied in this claim, making it fraudulent. Plaintiff has pictures of the equipment undamaged in the customer's Factory. Later the customer damaged the equipment and claimed it was delivered in this condition. Additionally, McDuff advised the customer to name the Estate of Doyle E. Piece as a defendant in this

case even though the contract was signed with A.P.M. This was in a move

to remove Plaintiff as the personal representative of Doyle Pierce's Estate.

Plaintiff is the sole owner of A.P.M. This case is ongoing. In the

preliminary hearing, McDuff filed a motion to intervene on the customer's

side against the Plaintiff. The Court accepted his motion. At this time, it

has not been disclosed how many customers of A.P.M. McDuff contacted,

making it impossible to assess the total damages.

63. Defendant Richard McDuff held a conversation with Judge Kenneth E. Johns

regarding case No: 2020ES3700532 over several emails. These emails contained

outrageous and false information. Defendant McDuff gave Judge Johns false and

defamatory information about Plaintiff before her appearance in Court. The Judge

should have recused himself from the case, knowing very well that the incorrect

information supplied by McDuff had impaired his judgment but did not. Judge

Kenneth E. Johns is currently suspended.

64. McDuff told blatant lies to Judge Johns regarding the status of Plaintiff's financial

standings. At the time of Plaintiff's departure for vacation, the rent on all facilities

was paid in full. The payroll was kept to date in her absence. All utility bills were

paid up. There was not a single delinquent invoice from anyone.

    a.   In an email from McDuff to Judge Johns, McDuff wrote, "*She is having*

*the utilities disconnected ... for nonpayment and is in default under the*

*payment terms of the lease on that property. We have employee witnesses*

*to testify that she has not paid them wages and is pursuing action with the*

*Department of Labor*." Due to McDuff's conflict of interest position as

the Attorney for the landlord could easily verify that the rent was paid. Plaintiff has admissible proof on each of these accusations. *A copy of the Email is annexed herein as Annexure K.*

    b.  The rent was paid with check Number #1023 for $4,500.00 issued to the cornerstone of Greenville (Landlord) dated 12/18/2021 for the period of rent dated December 20, 2020, to January 20, 2021. This Check was deposited the same day, December 18, 2020. At the time of the Email, the rent was paid in full. *A copy of the Check is annexed herein as Annexure L.*

    c.  Plaintiff has clear documentation that all wages were paid to date. The assertion made by McDuff came on January 12, 2021, well after all obligations were cleared and all employees had been coerced into quitting. Additionally, McDuff stated that the employees were "pursuing action with the department of labor," which never happened. *Copies of the paystubs have been annexed herein as Annexure M.*

65. In another communication, McDuff wrote, "*Judge John's, Sheriff Crenshaw has confirmed through the Department of Homeland Security that the PR, Dorothy Pierce, **has fled** the country and is in Uganda - not in Florida as she apparently told her attorney.*" Plaintiff consulted with her lawyer before leaving for Uganda and was informed that she was free to travel. Plaintiff purchased a round trip ticket and had told everyone who needed to know of her return date, including her Attorney and employees. McDuff did not attempt to contact Plaintiff to clarify any potential misunderstanding. This same lie that Plaintiff had fled, insinuating she would not

return, was spread by McDuff to many clients, employees, and contractors, having an enormous impact on Plaintiff's Reputation. As a note, Plaintiff is a Legal Resident of the United States of America and can come and go as she pleases. Mr. McDuff intended to mislead Judge Johns by misrepresenting Plaintiff's character and damaging Plaintiff's reputation to her employees and business partners. ***Copies of the emails and Itinerary are annexed herein as Annexure N.***

66. On or about January 25, 2021, when Defendant Richard H. McDuff's conflict of interest and violations became evident, Plaintiff requested termination of her lease with Cornerstone of Greenville for the face mask Manufacturing Factory (513 Bypass 123). This action was taken to distance herself from further harm by Richard McDuff. She moved her business to a new Factory and reinstalled the machines. The costs of this, including lost production time, are high. It was not until August 2021 that Plaintiff's business was partially ready to launch again.

67. In or about August 2021, Plaintiff was partially ready to market her face masks. She engaged the services of a local Newspaper company to advertise her products. On or about August 31, 2021, Plaintiff received an email from management of the newspaper stating that the newspaper would not run her advertisements due to information they had received statedly from Defendant Richard McDuff and anonymous reports from other Defendants, which tainted Plaintiff reputation and good name to the Newspaper company. Plaintiff is investigating all the anonymous sources. Accordingly, the newspaper company sent Plaintiff an Email citing the above and immediately stopped advertising Plaintiff's business. Plaintiff lost a highly effective marketing tool and significant revenue due to the Defendants' actions.

## CLAIMS FOR RELIEF

68. Civil Rights Act of 1866. Section 1981(a) provides the following: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to the like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

69. The Defendants' conduct as stated at length herein constitutes discrimination based on race in violation of 42 U.S.C. §1981.

70. The stated reasons for the Defendants' conduct were not the true reasons but instead was a pretext to hide the Defendants' discriminatory animus.

71. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied opportunities under 42 U.S. Code § 1981; and has suffered major depression, anguish, humiliation, distress, and inconvenience because of Defendants' actions, thereby entitling her to compensatory damages.

72. Plaintiff has suffered considerable expenses due to the Defendants' actions and inactions as stated herein. For instance, Plaintiff had paid $4,152.00 to the Seneca Light and Water to have the city dig a power line to provide power to Plaintiff's Factory. However, this expense went to waste when Defendants No.1, 2,3,4,5,6, and 7 uninstalled all machines they had installed in the Factory.

73. Defendants No.1, 2,3,4,5,6, and 7 maliciously uninstalled the machines, unprofessionally removed electrical wires, and damaged a full line of Automatic 3-

Ply disposable face mask Machine worth over $250,000. As a result, the Full line of the machines is in a dysfunctional state up to this time of filing.

74. Defendants No.1, 2,3,4,5,6, and 7 also left a series of damages, cuts, and dents on the Plaintiff's brand-new machines rendering the equipment old with less value.

75. That Plaintiff had made payment of $6,168.00 to Defendant No.1 for services rendered by Defendants No.1, 2,3,4,5,6, and 7 but all the installed cables and equipment that were fully paid for were uninstalled. All cables and electrical parts bought by Plaintiff for successful installation were taken by them, robbing Plaintiff of her money, items, and time to launch her business.

76. Plaintiff had equipped her Factory with all the stationery, computers, and other accessories in preparation for the launch, but the Defendants stole everything and left Plaintiff to start from zero.

77. Plaintiff was prepared to launch her business by the end of January 2021, but Defendants No.1, 2,3,4,5,6, and 7 intentionally and maliciously delayed the installation of the equipment for three months only to uninstall all the cables; hence the Plaintiff lost millions of dollars in revenue.

78. That Plaintiff lost her dream of owning a thriving factory and the profit she would have made if her business was operational, considering the booming facemasks business.

79. Plaintiff had standby contracts and orders worth millions of Face Masks that only awaited the completion of installation, which was derailed by the Defendants' actions. The missed opportunities cost the plaintiff millions of dollars in revenue and counting.

23

80. Plaintiff has incurred massive costs. First, Plaintiff has incurred expenditure in the form of wasted expenses in setting up the Factory only to have work done uninstalled. Second, Plaintiff lost contracts and profit that she would have made if her business was operational, considering the booming face masks business; Plaintiff incurred further costs in relocating and re-establishing her business. Third, Plaintiff lost thousands of stolen items from her Factory. Third, the Defendants damaged the Plaintiff's machines worth thousands of dollars while rendering other machines in a faulty state. It also costs a lot of time to reinstall and establish the Factory afresh. Lastly, Plaintiff suffered severe emotional distress, social anxiety and humiliation, nervous shock, and mental anguish because of the Defendants' actions and inactions as stated herein. ***Copies of relevant documents regarding the expenses mentioned above are annexed here as Annexure O.***

81. When the Defendants caused the Newspapers to stop Advertising the Plaintiff's products, Plaintiff lost millions of revenues and had to halt her operations for a while since she could not sell her masks to the local community where her target market resides.

82. That Plaintiff suffered severe emotional distress, social anxiety and humiliation, nervous shock, and mental anguish due to the Defendants' actions and inactions with mala fide intentions as stated herein.

## COUNT ONE

## RACE, ETHNICITY, OR NATIONAL ORIGIN-BASED DISCRIMINATION
### (Against all Defendants)

83. Plaintiff hereby incorporates by reference all the allegations contained in all the preceding paragraphs of this Complaint as though fully stated herein.

84. Defendants' discrimination against Plaintiff violates plaintiffs' rights, and the class afforded them by the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991. Civil Rights Act of 1866 & Civil Rights Act of 1871 - CRA - 42 U.S. Code 21 §§1981, 1981A, 1983, & 1988.

85. Civil Rights Act of 1866. Section 1981(a) provides the following: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to the like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

86. By the conduct described above, Defendants intentionally deprived Plaintiff of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, in violation of 42 U.S.C. §1981.

87. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied opportunities under 42 U.S. Code § 1981; and has suffered anguish, humiliation, distress, and inconvenience because of Defendants' actions, thereby entitling her to compensatory damages.

88. In its discriminatory actions as stated above, Defendants have acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages.

89. To remedy the violations of the rights of Plaintiff secured by Section 1981, Plaintiff requests that the Court award her the relief prayed for below.

90. The stated reasons for Defendant'sDefendant's conduct were not the true reasons but instead was a pretext to hide the Defendants' discriminatory animus.

91. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied opportunities under 42 U.S. Code § 1981; and has suffered major depression, anguish, humiliation, distress, and inconvenience because of Defendants' actions, thereby entitling her to compensatory damages.


## COUNT TWO

### UNJUST ENRICHMENT

**(Clement Electrical Inc, Sherry L. Burgess, Francesco Majia Amanda Franco; Melissa C. Chastain; Adam Jared Pierce, Sandra Phillips Pierce, Alton Fredrick Clements; Janet gay Clements; Jason Alton Clements; Nicholas Behringer, Brandon J. Durham; Jeffery Pilgrim, and Nicholson Jerry)**

92. Plaintiff hereby incorporates by reference all the allegations contained in all the preceding paragraphs of this Complaint as though fully stated herein.

93. The said Defendants unjustly enriched themselves by taking Plaintiff's items from Plaintiff's Factory. Also, Clement Electrical Unjustly enriched itself by uninstalling machines, which services Plaintiff had already paid for. Therefore, Plaintiff is entitled to a refund of her payment, lost time, and opportunity cost.

94. As a result of Defendants' actions stated herein, Plaintiff has lost a brand new air compressor, five new office chairs, four brand new desktop computers and laptops, and the pallet jack, tools, and supplies.

95. Because of their foregoing conduct - Defendants profited and enriched themselves unjustly at the expense and to Plaintiff's detriment.

96.  Defendants realized that they profited and enriched themselves at the expense and to Plaintiff's detriment.

97. Defendants retained the benefit under conditions that make it unjust to retain it without paying its value.

98. The stated reasons for the Defendants' conduct were not the true reasons but instead was a pretext to hide Defendants' discriminatory animus.

99. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied opportunities under 42 U.S. Code § 1981; and has suffered major depression, anguish, humiliation, distress, and inconvenience because of Defendants' actions, thereby entitling her to compensatory damages.

## COUNT THREE

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against all Defendants)

100.    Plaintiff hereby incorporates by reference all the allegations contained in all the preceding paragraphs of this Complaint as though fully stated herein.

101.    As set forth above, the Defendants' conduct was extreme and outrageous.

102.    Defendants ought to have reasonably known that their actions and inactions
would cause severe harm to Plaintiff.

103.    The Defendants failed to consider the adverse effects of their actions and
inactions on Plaintiff.

104.    Plaintiff has incurred massive costs. First, Plaintiff has incurred expenditure in
the form of wasted expenses in setting up the Factory only to have work done
uninstalled. Second, Plaintiff lost contracts and profits that she would have made if
her business was operational, considering the booming face masks business; Plaintiff
incurred further costs in relocating and re-establishing her business. Third, Plaintiff
lost thousands of stolen items from her Factory. Fourth, the Defendants damaged the
Plaintiff's machines worth thousands of dollars while rendering other machines in a
faulty state. It also costs a lot of time to reinstall and establish the Factory afresh.
Lastly, Plaintiff suffered severe emotional distress, social anxiety and humiliation,
nervous shock, and mental anguish because of the Defendants' actions and inactions
as stated herein.

105.    The stated reasons for the Defendants' conduct were not the true reasons but
instead was a pretext to hide the Defendants' discriminatory animus.

106.    As a result of Defendants' discrimination in violation of Section 1981, Plaintiff
has been denied opportunities under 42 U.S. Code § 1981; and has suffered
significant depression, anguish, humiliation, distress, and inconvenience because of
Defendants' actions, thereby entitling her to compensatory damages.

## COUNT FOUR

## BREACH OF CONTRACT

(Clement Electrical Inc, Sherry L. Burgess, Francesco Majia Armando Franco, Melissa C. Chastain; Adam Jared Pierce, Alton Fredrick Clements, Janet gay Clements, Jason Alton Clements, Nicholas Behringer, Brandon J. Durham, Jeffery Pilgrim, and Nicholson Jerry)

107.    Plaintiff hereby incorporates by reference all the allegations contained in all the preceding paragraphs of this Complaint as though fully stated herein.

108.    An implied contract existed between Defendants No. 10, 11, 12, and 13, i.e., the employees and the Plaintiff in terms of the employment relationship that they shared and between the Defendants No. 1, 2, 3, 4, 5, 6, and 7 and the Plaintiff in terms of service provider and purchaser. The said Defendants failed to discharge the duties and responsibilities imposed on them in lieu of the contract between them.

109.    The said Defendants No. 10, 11, 12, and 13 breached the contract and have taken advantage of the Plaintiff's property. As the single owner of her company and the sole financier, Plaintiff suffered directly from the Defendants' act.

110.    Plaintiff had granted periodic control over her assets and properties to Defendant. Still, the Defendants stole them and made inappropriate use leaving Plaintiff in colossal loss, thus failing to disperse their responsibilities per the contractual relationship.

111.    The said Defendants were obligated to perform their respective services in Plaintiff's business. They failed to act responsibly and misplaced the keys instead of handing them over to Plaintiff. They deliberately involved themselves with the other Defendants, which led to the above-narrated series of events and misappropriation of

the movable property of the Plaintiff's company, thus breaking the rules of the contractual relationship.

112.     The said Defendants further breached the contract when they decided to terminate the employment without reasonable notice and reasons.

113.     That a contract arose between the parties when Plaintiff availed Defendant No. 1 and the Defendant No. 1 provided the services. The service provider (Defendants herein) is expected to perform certain obligations in lieu of the services purchased and under the contract; Defendant No. 1 was obligated to provide electrical installation services for Plaintiff.

114.     It is an implied contract between the parties, a legally binding obligation that drives from actions, conduct, or circumstances. Therefore, Defendants No.1, 2, 3, 4, 5, 6, and 7 breached the contract by stopping their services and uninstalling the machines they had already installed at the Plaintiff's Factory.

115.     The plaintiff possesses all the proofs of the emails, invoices, payment receipts, wage payments against the said Defendants and may produce in a paper if the Court may direct to.

116.     Plaintiff has incurred massive costs. First, Plaintiff has incurred expenditure in the form of wasted expenses in setting up the Factory only to have work done uninstalled; Plaintiff lost contracts and profit that she would have made in the event her business was operational, considering the booming face masks business; Plaintiff incurred further costs in relocating and re-establishing her business. Plaintiff lost thousands of stolen items from her Factory. Third, the Defendants damaged the Plaintiff's machines worth thousands of dollars while rendering other machines in a faulty state.

It also costs a lot of time to reinstall and establish the Factory afresh. Lastly, Plaintiff suffered severe emotional distress, social anxiety and humiliation, nervous shock, and mental anguish because of the Defendants' actions and inactions as stated herein.

117.    The stated reasons for the Defendants' conduct were not the true reasons but instead were a pretext to hide the Defendants' discriminatory animus.

118.    As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied opportunities under 42 U.S. Code § 1981; and has suffered major depression, anguish, humiliation, distress, and inconvenience because of Defendants' actions, thereby entitling her to compensatory damages.

## COUNT FIVE

## TORTIOUS INTERFERENCE WITH BUSINESS

**(Against Sherry L. Burgess; Richard Hunt McDuff, Merrell, Jahn, & McDuff, Jared Adam Pierce, and Sandra Philips Pierce)**

119.    That Plaintiff hereby incorporates by reference all the allegations contained in all the preceding paragraphs of this Complaint as though fully stated herein.

120.    Plaintiff had a reasonable expectation that she would obtain the benefits from the services of Defendant No.1. to her company, and that her employees would abide by the employment

121.    rules. That the said Defendants interfered with the Plaintiff's reasonable financial expectations

122.    Notably, Defendant No.10 told Defendant No.1 that Plaintiff's company had gone bankrupt and that Plaintiff had run away to Africa, and she would not come back.

123.    Defendant No. 10 also spoke to Defendant No. 13, who told Plaintiff that she would not get back to work until she met Plaintiff.

124.    Defendant No. 14 spoke ill about Plaintiff to Plaintiff's employees, provoking them to terminate their employment.

125.    Defendant No. 8 influenced Defendant No. 14 to perform all the conduct stated in this Complaint. Besides, Defendant No. 8 interfered with Plaintiff's employees and played a role in the termination of their employment. Notably, he mobilized Plaintiff's employees against Plaintiff and told them that Plaintiff had fled to Africa. He also coordinated with Plaintiff's employees to have them leave the Factory's keys at the Sheriff's office.

126.    Defendants No. 14 and 15 interfered in Plaintiff's business as they gained unauthorized access to Plaintiff's business premises, i.e., warehouse and Factory, and misappropriated the personal items and the company's assets.

127.    Plaintiff has incurred massive costs. First, Plaintiff has incurred expenditure in the form of wasted expenses in setting up the Factory only to have work done uninstalled; Plaintiff lost contracts and profit that she would have made in the event her business was operational, considering the booming face masks business; Plaintiff incurred further costs in relocating and re-establishing her business. Plaintiff lost thousands of stolen items from her Factory. Third, the Defendants damaged the Plaintiff's machines worth thousands of dollars while rendering other machines in a faulty state. It also costs a lot of time to reinstall and establish the Factory afresh. Lastly, Plaintiff suffered severe emotional distress, social anxiety and humiliation, nervous shock, and mental anguish because of the Defendants' actions and inactions as stated herein.

128. The stated reasons for the Defendants' conduct were not the true reasons but instead was a pretext to hide the Defendants' discriminatory animus.

129. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied opportunities under 42 U.S. Code § 1981; and has suffered major depression, anguish, humiliation, distress, and inconvenience because of Defendants' actions, thereby entitling her to compensatory damages.

## COUNT SIX

## BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

**(Clement Electrical Inc, Sherry L. Burgess, Francesco Majia Armando Franco, Melissa C. Chastain; Jared Adam Pierce, Alton Fredrick Clements, Janet gay Clements, Jason Alton Clements, Nicholas Behringer, Brandon J. Durham, Jeffery Pilgrim, and Nicholson Jerry).**

130. Plaintiff hereby incorporates by reference all the allegations contained in all the preceding paragraphs of this Complaint as though fully stated herein.

131. The said Defendants had an implied duty of good faith and fair dealing out of the contractual relationship between the parties.

132. The doctrine of good faith and fair dealing bound the Defendants to ensure they offered all services in good faith.

133. The Defendants' actions and inactions as stated hereinabove amounted to violating the implied duty of good faith and fair dealing.

134. Notably, the Defendants failed to keep up the good faith and fair dealing as they had accessed the Plaintiff's factory premises without notice and uninstalled the machines without any existing reasons and for no default or fault of the Plaintiff that

the other Defendants contributed to influencing Defendant No. 1 to act as narrated above.

135.    As a result of the Defendants' acts as stated above, Plaintiff has incurred massive costs. First, Plaintiff has incurred expenditure in the form of wasted expenses in setting up the Factory only to have work done uninstalled; Plaintiff lost contracts and profit that she would have made in the event her business was operational, considering the booming face masks business; Plaintiff incurred further costs in relocating and re-establishing her business. Plaintiff lost thousands of stolen items from her Factory. Third, the Defendants damaged the Plaintiff's machines worth thousands of dollars while rendering other machines in a faulty state. It also costs a lot of time to reinstall and establish the Factory afresh. Lastly, Plaintiff suffered severe emotional distress, social anxiety and humiliation, nervous shock, and mental anguish because of the Defendants' actions and inactions as stated herein.

136.    The stated reasons for the Defendants' conduct were not the true reasons but instead was a pretext to hide the Defendants' discriminatory animus

137.    As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied opportunities under 42 U.S. Code § 1981; and has suffered major depression, anguish, humiliation, distress, and inconvenience because of Defendants' actions, thereby entitling her to compensatory damages.

## COUNT SEVEN

## CONVERSION

**(Against Clement Electrical; Sherry Burgess; Jerry; Armando Franco; Melissa Clark; Adam Pierce; Alton Fredrick Clements, Janet gay Clements, Jason Alton Clements; Nicholas Behringer, Brandon J. Durham, Jeffery Pilgrim, and Nicholson Jerry)**

138.    Plaintiff hereby incorporates by reference all the allegations contained in all the preceding paragraphs of this Complaint as though fully stated herein.

139.    Plaintiff owned the rights and all property within the Factory.

140.    The said Defendants obtained unlawful possession of the items they took from the Factory without Plaintiff's consent.

141.    The conduct above was inconsistent with Plaintiff's property rights thereof.

142.    The stated reasons for the Defendants' conduct were not the true reasons but instead was a pretext to hide the Defendants' discriminatory animus.

143.    As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied opportunities under 42 U.S. Code § 1981; and has suffered major depression, anguish, humiliation, distress, and inconvenience because of Defendants' actions, thereby entitling her to compensatory damages.

## COUNT EIGHT

## DEFAMATION

**(Against Richard Hunt McDuff; and Merrell, Jahn, & McDuff, Sherry L. Burgess, Jared Adam Pierce, Sandra Philips Pierce)**

144.    Plaintiff hereby incorporates by reference all the allegations contained in all the preceding paragraphs of this Complaint as though fully stated herein.

145. Defendant No. 8 made false statements purporting them to be facts. Notably, he told the newspaper company that Plaintiff was a criminal. He also presented inaccurate information about Plaintiff to the Judge. He told the Judge that Plaintiff's employees were ready to testify that Plaintiff had not paid them. In reality, Plaintiff had settled all due payments to her employees. He also lied to Plaintiff's employees about bogus criminal charges, damaging Plaintiff's good reputation.

146. The Defendants' statements caused injury to Plaintiff. For instance, the Newspaper Company stopped advertising Plaintiff's products. Plaintiff could therefore not market her products, leading to Plaintiff's loss in sales.

147. The statements to the Judge reasonably and objectively painted a negative image of Plaintiff in the Judge's eyes, thus impeding Plaintiff's access to justice.

148. The statements made by the said DefendantDefendant were false. Notably, Plaintiff has no criminal conviction against her.

149. Besides, the statements made by the Defendants are not privileged. Therefore, defendant No. 8 cannot claim confidential information as a defense because he fraudulently tarnished Plaintiff's image and name, knowing that all the statements he made were false.

150. Notably, Defendant No.10 told Defendant No.1 that Plaintiff's company had gone bankrupt and that Plaintiff had run away to Africa, and she would not come back.

151. The stated reasons for the Defendants' conduct were not the true reasons but instead was a pretext to hide the Defendants' discriminatory animus.

152. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied opportunities under 42 U.S. Code § 1981; and has suffered major

depression, anguish, humiliation, distress, and inconvenience because of Defendants' actions, thereby entitling her to compensatory damages.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in their favor and against Defendants, granting the following relief.

I.    The Court orders damages amounting to $96,980,000.00(Ninety-Six Million, Nine Hundred Eighty Thousand Dollars Only.)

II.   The sum of $88,000,00,000.00 (eighty-eight million dollars) in compensatory damages suffered because of the Racial, Ethnicity, or National Origin-Based discrimination.

III.  The Court orders a refund of all monies already paid to Clement Electrical Inc. and disbursing the stolen items.
IV.   Interest as provided by law.
V.    An award of fees and costs.
VI.   Disciplinary action against Richard McDuff for Professional Misconduct and violations.
VII.  The Court issues any other order that this institution deems just.

Dated: January 19, 2022

By: _____

DOROTHY PIERCE, Pro se