IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Dorothy Pierce, | C/A No. 8:22-cv-00175-TMC-KFM |
| Plaintiff, | **REPORT OF MAGISTRATE JUDGE** |
| vs. | |
| Clements Electrical, Inc.; Alton Frederick Clements, Jr.; Janet Gay Clements; Jason Alton Clements; Nicholas Behringer; Brandon J. Durham; Jeffery Pilgrim; Richard Hunt McDuff; Morrell, Jahn, & McDuff, PA; Sherry L. Burgess; Jerry Nickolson; Francesco Majia Armando Frank; Melissa C. Chastain; Jared Adam Pierce; Sandra Philips Pierce; | |
| Defendants. | |

This is a civil action filed by the plaintiff, proceeding *pro se*. Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in this case and submit findings and recommendations to the district court. The plaintiff's complaint was entered on the docket on January 19, 2022 (doc. 1). However, upon review of the plaintiff's complaint, the undersigned recommends it be dismissed.

## ALLEGATIONS

The plaintiff alleges federal question jurisdiction based upon the defendants' violations of her rights under 42 U.S.C. § 1981 (doc. 1). The plaintiff contends that in 2019 she started a business in Seneca, South Carolina, with the purpose of making masks due to the pandemic (*id*. at 7–8). The plaintiff leased manufacturing space from Cornerstone of Greenville, LLC, and the lease agreement was drawn up by Cornerstone's attorney, defendant Mr. McDuff (*id*. at 8, 15–16). The plaintiff hired several of the defendants to work

for her at the factory – Sherry Burgess, Jerry Nicholson, Francesco Frank, and Melissa Chastain (*id*. at 9, 11). At the urging of Sherry Burgess, the plaintiff hired Clements Electrical to install the mask manufacturing machines and Clements Electrical employed the following defendants – Alton Clements, Janet Clements, Jason Clements, Nick Behringer, Brandon Durham, and Jeffery Pilgrim (*id*. at 9–10).

The plaintiff had a trip to Uganda planned from December 18, 2020, through January 18, 2021 (*id*. at 10). The plaintiff released all employees for the holiday, made sure all employees were paid through her return, and made sure her rent and invoices for the factory were paid (*id*.). The plaintiff paid the first invoice from Clements Electrical before her trip, but did not pay a second invoice that was due January 27, 2021 (*id*. at 10–11). While on her trip, the plaintiff received communication from Sherry Burgess that she, Jerry Nicholson, and Francesco Frank were quitting and from Melissa Chastain that she was quitting (*id*. at 11). After quitting, Sherry Burgess tried to access the factory's bank account and pay the not-yet-due-invoice from Clements Electrical (*id*. at 12). The plaintiff alleges that the defendants then unlawfully accessed the factory and uninstalled the manufacturing machines, damaged them, and stole several other items – including an air compressor, office chairs, desktop computers, a pallet jack, six office telephones, a printer, and other tools and supplies (*id*. at 12–13). The plaintiff further contends that defendants Jared and Sandy Pierce broke into the warehouse and copied documents and stole other items (*id*. at 14, 17). When the plaintiff spoke to Jason Clements to resolve the unpaid invoice and uninstalled machines, Jason Clements told the plaintiff to sue him and threatened to have her arrested (*id*. at 15). The plaintiff filed a police report regarding the stolen equipment (*id*. at 15).

The plaintiff contends that while she was in Uganda for her trip, Mr. McDuff tried to ruin her (*id*. at 16). This included alleged illegal communications with the plaintiff's employees, which the plaintiff believes led to their decision to quit working for the plaintiff,

and led to her factory keys being turned into the Oconee County Sheriff's Department (*id*. at 16–17). The plaintiff further contends that during this time Mr. McDuff obtained a copy of her customer list and contacted them with false and defamatory information (*id*. at 11, 16–18). This caused her customers to file breach of trust claims against the plaintiff, which were later dismissed (*id*. at 18). Mr. McDuff is also representing defendant Jared Pierce in a probate proceeding involving the plaintiff's late husband, even though Mr. McDuff has a conflict (because the plaintiff's late husband was involved in the lease from Cornerstone drafted by Mr. McDuff) (*id*. at 14–16). The plaintiff alleges that she believes that the actions were based upon her race (*id*. at 16).

The plaintiff further contends that another client used one of Mr. McDuff's friends to file another action against the plaintiff (*id*. at 18–19). That action, filed in the Oconee County Court of Common Pleas, remains pending at this time. *See* Oconee County Public Index, https://publicindex.sccourts.org/Oconee/PublicIndex/PISearch.aspx (enter the plaintiff's name and 2021CP3700149) (last visited February 4, 2022).

The plaintiff further contends that Mr. McDuff had improper communications – containing fraudulent statements – with the probate judge adjudicating her husband's estate, Judge Kenneth Johns (*id*. at 19–21). Of note, the estate appears to still be open, with the last order entered by Judge Johns finding that the will submitted by the plaintiff was not signed by her husband and removing her as personal representative of the estate. *See* Oconee County Public Index (enter the plaintiff's name and 2021CP3700560) (last visited February 4, 2022). The plaintiff appealed the order to the Oconee County Court of Common Pleas, but Judge Johns' order was affirmed. *Id*. The plaintiff filed a notice of appeal of that decision, but it appears that she did not perfect the appeal, as no cases appear on the public appellate case management system. *Id*.

The plaintiff alleges that she terminated her lease with Cornerstone on January 25, 2021, and it took until August 2021, for her to find a new space and prepare

to market her face masks (doc. 1 at 21). The plaintiff solicited an ad from a local newspaper to market her face masks, but the newspaper cancelled her ad after Mr. McDuff told them defamatory information about the plaintiff (*id*.).

The plaintiff alleges that the defendants' actions violated § 1981 (*id*. at 22–26). The plaintiff also seeks relief for unjust enrichment (*id*. at 26–27), intentional infliction of emotional distress (*id*. at 27–28), breach of contract (*id*. at 29–31), tortious interference with business (*id*. at 31–33), breach of implied duty of good faith and fair dealing (*id*. at 33–34), conversion (*id*. at 35), and defamation (*id*. at 35–37). For relief, the plaintiff seeks money damages in excess of 90 million dollars (*id*. at 37).

## **STANDARD OF REVIEW**

As a *pro se* litigant, the plaintiff's pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Under established local procedure in this judicial district, a careful review has been made of the *pro se* pleadings. This court possesses the inherent authority to review the *pro se* complaint to ensure that subject matter jurisdiction exists and that a case is not frivolous, even if the pleading is not subject to the pre-screening provisions of 28 U.S.C. § 1915.[1] *See Mallard v. U.S. Dist. Court*, 490 U.S. 296, 307–08 (1989) ("Section 1915(d) . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision."); *Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012) (unpublished) (finding that "frivolous

---

[1] The plaintiff paid the full filing fee; thus, this case is not subject to the pre-screening provisions of 28 U.S.C. § 1915. Further, the case is not subject to the screening provided for in 28 U.S.C. § 1915A because the plaintiff is not a prisoner.

4

complaints are subject to dismissal pursuant to the inherent authority of the court, even when the filing fee has been paid . . . [and] because a court lacks subject matter jurisdiction over an obviously frivolous complaint, dismissal prior to service of process is permitted." (citations omitted)); *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (finding that "district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee"). Accordingly, "[t]he present Complaint is subject to review pursuant to the inherent authority of this Court to ensure that subject matter jurisdiction exists and that the case is not frivolous." *Trawick v. Med. Univ. of S.C.*, C/A No. 2:16-cv-730-DCN-MGB, 2016 WL 8650132, at *4 (D.S.C. June 28, 2016), *Report and Recommendation adopted by* 2016 WL 8650131 (D.S.C. July 7, 2016), *aff'd* 671 F. App'x 85 (4th Cir. 2016) (mem).

## **DISCUSSION**

As an initial matter, the court takes judicial notice of ancillary proceedings in the South Carolina State Court.[2] *See* Oconee County Public Index (enter the plaintiff's name and 2021CP3700149, 2021CP3700560)) (last visited February 4, 2022). For the reasons that follow, the instant matter is subject to summary dismissal.

"The Federal Rules of Civil Procedure recognize that courts must have the authority to control litigation before them." *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989) (citing Fed. R. Civ. P. 41(b)). Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Since federal courts have limited subject matter jurisdiction, there is no presumption that the court has jurisdiction. *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394,

---

[2] *Phillips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that '[t]he most frequent use of judicial notice . . . is in noticing the content of court records.'").

5

399 (4th Cir. 1999) (citing *Lehigh Mining & Mfg. Co. v. Kelly*, 160 U.S. 337 (1895)). Accordingly, a federal court is required, *sua sponte*, to determine if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears." *Bulldog Trucking*, 147 F.3d at 352; *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Here, as outlined below, the court lacks subject matter jurisdiction over this action; thus, it should be dismissed.

**Section 1981 Claim**

The plaintiff brings this action in federal court based upon federal question jurisdiction, asserting that the defendants violated her rights under 42 U.S.C. § 1981 (doc. 1).[3] However, the elaborate conspiracy described by the plaintiff in support of her § 1981 claim finds no basis in law or fact to support federal proceedings. *See Feurtado v. McNair*, No. 3:05-cv-1933-SB, 2006 WL 1663792, at *2 (D.S.C. Jun. 15, 2006) (noting that frivolousness encompasses inarguable legal conclusions and fanciful factual allegations), *aff'd*, 227 F. App'x 303 (4th Cir. 2007), *petition for cert. dismissed*, 553 U.S. 1029 (2008).

Congress passed § 1981 to "guarantee[] to all persons in the United States the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." *Nadendla v. Wakemed*, --- F.4th ----, 2022 WL 187835, at *3 (4th Cir. 2022) (internal citations and quotation marks omitted). To succeed on a § 1981 claim, a plaintiff must establish (1) that the defendant intended to discriminate on the basis of race and (2) that the discrimination interfered with a contractual interest. *Id.* (internal citations omitted). The plaintiff must show that the interference with a contractual interest would not have happened *but for* the plaintiff's race. *Id.* (citing *Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S.Ct. 1009, 1019 (2020)).

---

[3] Of note, as discussed, *infra*, the plaintiff's remaining claims are grounded in state law and can only be considered by this court through the exercise of supplemental jurisdiction. *See infra* p. 8.

Here, aside from alleging that the defendants are conspiring to ruin the plaintiff, the plaintiff's complaint contains only conclusory formulaic recitations of the elements of § 1981. Further, the plaintiff has not alleged interference with a contractual interest by the defendants. For example, the only contracts mentioned in the plaintiff's complaint are a lease from Cornerstone and an "implied" employment contract with some of the other defendants (*see* doc. 1). However, the plaintiff voluntarily ended her lease with Cornerstone; thus, while the defendants' alleged actions were part of the plaintiff's decision to end her lease, they did not cause Cornerstone to cancel the plaintiff's lease based on her race. With respect to the plaintiff's allegations that some of the defendants caused the breach of her implied employment contract with other defendants, her claim fails for two reasons: (1) there is no indication that the former employees quit based upon actions by some of the other the defendants and (2) the plaintiff has not established that race was the but-for cause for the employees quitting. Indeed, the plaintiff alleges that she believes that Mr. McDuff would have acted differently if she were caucasian (doc. 1 at 16); however, as noted by the Supreme Court, it is not enough to show that "race played 'some role' in the defendant's decisionmaking process" it must be a "but-for" cause of the actions. *See Comcast*, 140 S.Ct. at 1019. Moreover, the plaintiff's allegations that the defendants are conspiring to ruin her appear based upon a personal animus related to the disposition of the estate of the plaintiff's husband, *not* a racial animus, and the plaintiff's conclusory assertions of pretext fail to save her § 1981 claim. *Griffith v. State Farm Fire and Cas. Co.*, C/A No. 2:12-cv-00239-DCN, 2012 WL 2048200, at *1 (D.S.C. June 6, 2012) (finding that the plausibility standard requires more than "'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As such, the plaintiff's § 1981 claim is subject to summary dismissal based upon the inherent authority of the court.

**South Carolina State Law Claims**

The plaintiff's claims for unjust enrichment, intentional infliction of emotional distress, breach of contract, tortious interference with business, breach of implied duty of good faith and fair dealing, conversion, and defamation are grounded in state law (not federal law) (*see* doc. 1 at 26–37). Because, as outlined above, the plaintiff has not stated a federal claim for relief, the court should abstain from exercising jurisdiction over such claims. Such claims can be considered by this court through the exercise of "supplemental jurisdiction," which allows federal courts to hear and decide state law claims along with federal claims. *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 387 (1998); 28 U.S.C. § 1367. However, federal courts are permitted to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) if "the district court has dismissed all claims over which it has original jurisdiction." Here, as noted, the plaintiff's § 1981 claim is subject to summary dismissal. Thus, this court should decline to exercise supplemental jurisdiction over the plaintiff's state law claims under 28 U.S.C. § 1367(c)(3). *See Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999) ("[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants.").

**RECOMMENDATION**

The undersigned is of the opinion that the plaintiff cannot cure the defects identified above by amending her complaint. *See Goode v. Cent. Va. Legal Aid Soc'y*, 807 F.3d 619, 623 (4th Cir. 2015). Thus, the undersigned recommends that the court decline to automatically give the plaintiff leave to amend her complaint. *See Workman v. Kernell*, C/A No. 6:18-cv-00355-RBH-KFM, 2018 WL 4826535, at *2 n.7 (D.S.C. Oct. 2, 2018); *McSwain v. Jobs*, No. 1:13-cv-00890, 2014 WL 12672619, at *1 (M.D.N.C. Jan. 6, 2014) (noting that "given the preposterous and frivolous nature of [the plaintiff's] complaint, it would be a waste of limited judicial resources to give him an opportunity to amend."). Accordingly, based upon the foregoing, the Court recommends that the District Court

dismiss this action without prejudice and without issuance and service of process. The undersigned also recommends that the court decline to exercise supplemental jurisdiction over the plaintiff's state law claims. **The plaintiff's attention is directed to the important notice on the next page.**

        **IT IS SO RECOMMENDED**.

                                                  s/Kevin F. McDonald
                                                  United States Magistrate Judge

February 4, 2022
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Room 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).